LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
Taimur Alamgir (TA 9007)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

───────────────────────────────

BRYAN JAMES, MIGUEL BALLINAS,
KIM KRAMER, CHRISTOPHER ROSADO,
JONATHAN GAGNE and MICHELLE ALVORD,
*on behalf of themselves,*
*FLSA Collective Plaintiffs and the Class,*

                 Plaintiffs,

                 v.

CHINA GRILL MANAGEMENT, INC., CGM-LLNR
LLC d/b/a ASIA DE CUBA, CHINA GRILL, INC.
d/b/a CHINA GRILL, CGM EMP LLC d/b/a ED'S
CHOWDERHOUSE, CGM EMP RTP LLC d/b/a
EMPIRE HOTEL ROOFTOP, CGM-GH LLC, CGM 13
LLC, CGM YOTEL NYC LLC d/b/a EAST AND WEST,
CHINA GRILL MANAGEMENT 12 E 22 LLC d/b/a
ALMOND, RF HUDSON LLC d/b/a REDFARM, RF
BROADWAY LLC d/b/a REDFARM, CG BRICKELL,
LLC d/b/a KOMODO, CHINA GRILL FTL, LLC d/b/a
CHINA GRILL FORT LAUDERDALE, CHINA GRILL
CAFÉ SUNSET, INC. d/b/a CHINA GRILL MIAMI,
JOHN DOE CORP. d/b/a BISCAYNE TAVERN,
JEFFREY CHODOROW, LINDA CHODOROW,
ZACH CHODOROW, MAX CHODOROW,
NEIL FAGGEN and JOHN MICHAEL POLSENBERG,

                 Defendants.

───────────────────────────────

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

 Jury Trial Demanded

Plaintiffs, BRYAN JAMES, MIGUEL BALLINAS, KIM KRAMER, CHRISTOPHER ROSADO, JONATHAN GAGNE, and MICHELLE ALVORD (collectively "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, CHINA GRILL MANAGEMENT, INC., CGM-LLNR LLC d/b/a ASIA DE CUBA, CHINA GRILL, INC. d/b/a CHINA GRILL, CGM EMP LLC d/b/a ED'S CHOWDERHOUSE, CGM EMP RTP LLC d/b/a EMPIRE HOTEL ROOFTOP, CGM-GH LLC, CGM 13 LLC, CGM YOTEL NYC LLC d/b/a EAST AND WEST, CHINA GRILL MANAGEMENT 12 E 22 LLC d/b/a ALMOND, RF HUDSON LLC d/b/a REDFARM, RF BROADWAY LLC d/b/a REDFARM, CG BRICKELL, LLC d/b/a KOMODO, CHINA GRILL FTL, LLC d/b/a CHINA GRILL FORT LAUDERDALE, CHINA GRILL CAFÉ SUNSET, INC. d/b/a CHINA GRILL MIAMI, JOHN DOE CORP. d/b/a BISCAYNE TAVERN (the "Corporate Defendants") JEFFREY CHODOROW, LINDA CHODOROW, ZACH CHODOROW, MAX CHODOROW, NEIL FAGGEN and JOHN MICHAEL POLSENBERG (the "Individual Defendants" and, together with the Corporate Defendants, "Defendants"),  and state as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA") that they are entitled to recover from Defendants: (1) unpaid overtime premium, (2) unpaid minimum wages resulting from an invalid tip credit, (3) unpaid regular and overtime wages resulting from unpaid off the clock work, (4) liquidated damages, and (5) attorney's fees and costs.

2.      Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1)

2

unpaid overtime premium, (2) unpaid wages resulting from an invalid tip credit, (3) unpaid regular and overtime wages resulting from unpaid off-the clock work, (4) unpaid spread of hours premium, (5) unlawfully misappropriated gratuities; (6) unreimbursed uniform expenses, (7) statutory penalties, (8) liquidated damages, and (9) attorney's fees and costs.

3.      Plaintiffs GAGNE and ALVORD further allege that, pursuant to the Florida Minimum Wage Act ("FMWA"), they are entitled to (1) unpaid minimum wages, (2) unpaid wages due to unpaid off the clock work, misappropriated tips, and unreimbursed uniform expenses, (3) liquidated damages, and (4) attorney's fees and costs.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5.      Original jurisdiction also exists over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this case is a putative class action in which: (1) there are 100 or more members in the proposed class; (2) at least some members of the proposed class have a different citizenship from Defendants; and (3) the claims of the proposed Class Members exceed $5,000,000.00 in aggregate.

6.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

7.      Plaintiff BRYAN JAMES is a resident of Westchester County, New York.

8.      Plaintiff MIGUEL BALLINAS is a resident of Queens County, New York.

9.      Plaintiff KIM KRAMER is a resident of Queens County, New York.

10.     Plaintiff CHRISTOPHER ROSADO is a resident of New York County, New York.

11.    Plaintiff JONATHAN GAGNE is a resident of Broward County, Florida.

12.    Plaintiff MICHELLE ALVORD is a resident of Broward County, Florida.

13.    Defendants own and operate "China Grill Management," an international restaurant enterprise. China Grill Management operates a number of restaurants and bars in the New York, NY and Miami, FL metropolitan areas (in addition to other major cities throughout the world). Defendants operate (or formerly operated) the following restaurants in New York City:

a)    "Asia de Cuba" – 415 Lafayette Street, New York, NY 10003;

b)    "China Grill" – 60 West 53rd Street, New York, NY 10019;

c)    "Ed's Chowder House" and "The Empire Hotel Rooftop" – The Empire Hotel, 44 West 63rd Street, New York, NY 10023;

d)    "Plunge Rooftop Bar", "The Chester", "Zerzura", "Carte Blanche" – The Gansevoort Hotel, 18 West 9th Avenue, New York, NY 10014;

e)    "RedFarm" (West Village) – 529 Hudson Street, New York, NY 10014

f)    "RedFarm" (Upper West Side)  – 2170 Broadway, New York, NY 10024

g)    "All'onda" – 22 East 13th Street, New York, NY 10003;

h)    "Babu Ji" - – 22 East 13th Street, New York, NY 10003;

i)    "East and West" –  YOTEL Hotel, 570 10th Avenue, New York, NY 10036; and

j)    "Almond" – 12 East 22nd Street, New York, NY 10010.

Defendants also operate (or formerly operated) restaurants in the Miami area under the following trade names:

a.    "China Grill" (Fort Lauderdale) - 1881 SE 17th St, Fort Lauderdale, FL 33316;

b.    "China Grill" (Miami) - 404 Washington Ave., Miami Beach, FL 33139;

c.    "Komodo" - 801 Brickell Ave, Miami, FL 33131; and

    d.  "Biscayne Tavern" – YVE Hotel, 146 Biscayne Boulevard, Miami, FL 33132

(Collectively, the New York and Florida locations are hereinafter referred to as, "the Restaurants").

14.   The Corporate Defendants:

    a)  Corporate Defendant CHINA GRILL MANAGEMENT, INC. is a corporation organized under the laws of the State of Florida, with a corporate headquarters and address for service of process located at 3000 SE 148th Avenue, Ste. 303, Miramar, FL 33027. CHINA GRILL MANAGEMENT, INC. is the principal entity through which Defendants operate China Grill Management. CHINA GRILL MANAGEMENT, INC. owns and/or controls each of the other Corporate Defendants. CHINA GRILL MANAGEMENT, INC. is responsible for all aspects of the centralized management and administration of all of Defendants' Restaurants.

    b)  Corporate Defendant CGM-LLNR LLC d/b/a ASIA DE CUBA is a domestic limited liability company organized under the laws of the State of New York, and an address for service of process located at c/o Windels Marx Lane & Mittendorf, LLP, 156 W. 56th St. Attn: Bruce Bronster, New York, New York, 10019. CGM-LLNR LLC operates the "Asia de Cuba" Restaurant located at 415 Lafayette Street, New York, NY 10003.

    c)  Corporate Defendant CHINA GRILL, INC. d/b/a CHINA GRILL is a domestic business corporation organized under the laws of the State of New York and an address for service of process located at c/o Neil Faggen, Esquire, 242 N. 22nd Street, First Floor, Philadelphia, Pennsylvania, 19103. Defendants operated the

"China Grill" Restaurant located at 60 West 53rd Street, New York, NY 10019 through Corporate Defendant CHINA GRILL, INC.

d) Corporate Defendant CGM EMP LLC d/b/a ED'S CHOWDERHOUSE is a foreign limited liability company organized under the laws of the State of Delaware, and an address for service of process located at c/o CT Corporation System, 111 Eighth Avenue, New York, New York, 10011. CGM EMP LLC is the operating entity for the "Ed's Chowderhouse" Restaurant, located at the Empire Hotel, 44 West 63rd Street, New York, NY 10023.

e) Corporate Defendant CGM EMP RTP LLC d/b/a EMPIRE HOTEL ROOFTOP is a foreign limited liability company organized under the laws of the State of Delaware, with an address for service of process located at c/o C T Corporation System, 111 Eighth Avenue, New York, New York, 10011. CGM EMP RTP LLC is the operating entity for the "Empire Hotel Rooftop", located at the Empire Hotel, 44 West 63rd Street, New York, NY 10023.

f) Corporate Defendant CGM-GH LLC is a domestic business corporation organized under the laws of the State of New York, with an address for service of process located at c/o C T Corporation System, 111 Eighth Avenue, New York, New York, 10011. CGM-GH LLC is the operating entity for "Plunge Rooftop Bar", "Zerzura", "The Chester" and "Carte Blanche" (all of which are located at the Gansevoort Hotel at 18 West 9th Avenue, New York, New York 10014).

g) Corporate Defendant RF HUDSON LLC d/b/a REDFARM is a foreign limited liability company organized under the laws of the State of Delaware, and an address for service of process located at 529 Hudson Street, New York, NY 10014. RF

6

HUDSON LLC is the operating entity for the "RedFarm" Restaurant, located at 529 Hudson Street, New York, NY 10014

h) Corporate Defendant RF BROADWAY LLC d/b/a REDFARM is a foreign limited liability company organized under the laws of the State of Delaware, and an address for service of process located at Edward Schoenfeld c/o RedFarm, 2170 Broadway, New York, NY 10024. RF BROADWAY LLC is the operating entity for the "RedFarm" Restaurant, located at 2170 Broadway, New York, NY 10024.

i) Corporate Defendant CGM 13 LLC is a domestic limited liability company organized under the laws of the State of New York, and an address for service of process located at CGM 13, LLC, ATTN: Bruce F. Bronster, Esq., 156 West 56th Street, New York, New York, 10019. Before 2016, Defendants operated "All'onda" (located at 22 East 13th Street, New York, New York 10003) through Corporate Defendant CGM 13 LLC. Since May 2017, CGM 13 LLC has been the operating entity for "Babu Ji" (which is also located at 22 East 13th Street, New York, New York 10003).

j) Corporate Defendant CGM YOTEL NYC LLC d/b/a EAST AND WEST ("East and West") is a foreign limited liability company organized under the laws of the State of Delaware and an address for service of process located at c/o CG Regional LLC, 330 7th Avenue, New York, New York 10001. Defendants operate "East and West" (located at YOTEL, 570 10th Avenue, New York, New York 10036) through Corporate Defendant CGM YOTEL NYC LLC.

k) Corporate Defendant CHINA GRILL MANAGEMENT 12 E 22 LLC d/b/a ALMOND  is a foreign limited liability company organized under the laws of the

State of Delaware and an address for service of process located at c/o C T Corporation System, 111 Eighth Avenue, New York, New York, 10011. Defendants operated "Almond" (located at 12 East 22nd Street, New York, NY 10010) through Corporate Defendant CHINA GRILL MANAGEMENT 12 E 22 LLC.

l)  Corporate Defendant CG BRICKELL, LLC d/b/a KOMODO is a foreign limited liability company organized under the laws of the State of Florida and an address for service of process located at 3000 SW 148th Avenue, Suite 303, Miramar, Florida 33027. CG BRICKELL, LLC is the operating entity for "Komodo", which is located at 801 Brickell Avenue, Miami, Florida 33131.

m)  Corporate Defendant CHINA GRILL FTL, LLC d/b/a CHINA GRILL ("China Grill – Fort Lauderdale") is a foreign limited liability company organized under the laws of the State of Florida with an address for service of process located at C.G. Holdings Inc., 16400 NW 2nd Avenue, Ste. 200, Miami, FL 33169. CHINA GRILL FTL, LLC was the operating entity for "China Grill – Fort Lauderdale" which was located at 1881 SE 17th Street Causeway, Fort Lauderdale, FL 33316.

n)  Corporate Defendant CHINA GRILL CAFÉ SUNSET, INC. d/b/a CHINA GRILL ("China Grill – Miami") is a foreign corporation organized under the laws of the State of Florida, with an address for service of process at 404 Washington Avenue, Miami, Florida 33319. Defendants operated "China Grill – Miami Beach" (located at 404 Washington Avenue, Miami, Florida 33319) through CHINA GRILL CAFÉ SUNSET, INC.

o) Corporate Defendant JOHN DOE CORP. d/b/a BISCAYNE TAVERN is a foreign corporation organized under the laws of the State of Florida, which operates the "Biscayne Tavern" Restaurant in the YVE Hotel, 146 Biscayne Boulevard, Miami, FL 33132.

15. Individual Defendants:

a) Individual Defendant JEFFREY CHODOROW is an owner and executive officer of all Corporate Defendants, a principal of all the Restaurants, and the founder, President, and Chief Executive Officer of CHINA GRILL MANAGEMENT, INC. JEFFREY CHODOROW exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment.. JEFFREY CHODOROW exercised functional control over the business and financial operations of all Corporate Defendants. JEFFREY CHODOROW additionally has the power to fire and hire, supervise and control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiffs and the Class. He ensured that managers direct employees to properly prepare food and effectively serve and cater to customers to ensure that the Restaurants are operating efficiently and profitably.

b) Individual Defendant LINDA CHODOROW is an owner and executive officer of all Corporate Defendants, a principal of all the Restaurants, and a Director of

Corporate Defendant CHINA GRILL MANAGEMENT, INC.. LINDA CHODOROW exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, she exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. . LINDA CHODOROW exercised functional control over the business and financial operations of all Corporate Defendants. LINDA CHODOROW additionally has the power to fire and hire, supervise and control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiffs and the Class.  She ensured that managers direct employees to properly prepare food and effectively serve and cater to customers to ensure that the Restaurants are operating efficiently and profitably.

c)  Individual Defendant ZACH CHODOROW is an owner and executive officer of all Corporate Defendants, a principal of all the Restaurants, and a Director of Corporate Defendant CHINA GRILL MANAGEMENT, INC.. ZACH CHODOROW exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, she exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. ZACHARY CHODOROW exercised functional control over the business and financial operations of all Corporate Defendants. ZACH CHODOROW additionally has

10

the power to fire and hire, supervise and control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiffs and the Class.  She ensured that managers direct employees to properly prepare food and effectively serve and cater to customers to ensure that the Restaurants are operating efficiently and profitably.

d) Individual Defendant MAX CHODOROW is an owner and executive officer of all Corporate Defendants, a senior of Corporate Defendant CHINA GRILL MANAGEMENT, INC., the manager of "China Grill – Fort Lauderdale" from 2012-2013, and the manager of "Asia de Cuba" from 2015-2017. MAX CHODOROW exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, she exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. MAX CHODOROW exercised functional control over the business and financial operations of all Corporate Defendants. MAX CHODOROW additionally has the power to fire and hire, supervise and control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiffs and the Class.  He ensured that managers direct employees to properly prepare food and effectively serve and cater to customers to ensure that the Restaurants are operating efficiently and profitably.

e) Individual Defendant NEIL FAGGEN is an owner and executive officer of all Corporate Defendants, a principal of all the Restaurants, and the corporate

Secretary of Corporate Defendant CHINA GRILL MANAGEMENT, INC.. NEIL FAGGEN exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. NEIL FAGGEN exercised functional control over the business and financial operations of all Corporate Defendants. NEIL FAGGEN additionally has the power to fire and hire, supervise and control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiffs and the Class.  He ensured that managers direct employees to properly prepare food and effectively serve and cater to customers to ensure that the Restaurants are operating efficiently and profitably.

f)  Individual Defendant JOHN MICHAEL POLSENBERG is an owner and executive officer of all Corporate Defendants, a principal of all the Restaurants, and the Chief Financial Officer of Corporate Defendant CHINA GRILL MANAGEMENT, INC. JOHN MICHAEL POLSENBERG exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. JOHN MICHAEL POLSENBERG exercised functional control over the business and financial operations of all Corporate

Defendants. JOHN MICHAEL POLSENBERG additionally has the power to fire and hire, supervise and control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiffs and the Class.  He ensured that managers direct employees to properly prepare food and effectively serve and cater to customers to ensure that the Restaurants are operating efficiently and profitably.

16.    Defendants operate the Restaurants as a single integrated enterprise. As set forth below, the Restaurants engaged in related activities, share common ownership and have a common business purpose.

a)  The Restaurants each offer high-end fine dining and nightlife to a sophisticated clientele in major cities including New York and Miami.

b)  The Restaurants are operated by the Individual Defendants through CHINA GRILL MANAGEMENT, INC. CHINA GRILL MANAGEMENT, INC. owns and/or controls each of the other Corporate Defendants. Further, CHINA GRILL MANAGEMENT, INC. maintains centralized control of and manages of all of Defendants' Restaurants.

c)  Individual Defendants are all principals of CHINA GRILL MANAGEMENT, INC., the central entity through which all the Restaurants are collectively managed. JEFFREY CHODOROW is the founder, majority owner, President, and Chief Executive Officer of CHINA GRILL MANAGEMENT, INC. His wife, Defendant LINDA CHODOROW and his sons, Defendant ZACH CHODOROW and Defendant MAX CHODOROW, are Directors, part owners and principals of CHINA GRILL MANAGEMENT, INC. Defendant NEIL FAGGEN serves as

corporate Secretary for, and is a part owner of CHINA GRILL MANAGEMENT, INC. Defendant JOHN MICHAEL POLSENBERG is the Chief Financial Officer and a part owner of CHINA GRILL MANAGEMENT, INC.

d) Individual Defendants are each part owners of CHINA GRILL MANAGEMENT, INC. and each Restaurant.

e) Defendants' Restaurants maintain centralized labor relations and human resources, and a single payroll system for employees at all of the Restaurants. Defendants' employment policies with respect to employee compensation and workplace discrimination were formulated and instituted by Defendants' centralized human resources division.

f) The Restaurants all use the same payroll services provider, ADP.

g) In an article featured in the University of Pennsylvania Law Journal about Defendant JEFFREY CHODOROW, China Grill Management was described as "a $250-million Miami-based international restaurant empire". The 2008 article, based on an interview with Defendant CHODOROW himself, further describes China Grill Management as a "30-plus restaurant company…" *See* EXHIBIT A.

h) The China Grill Management Facebook page lists restaurants operated by China Grill Management, including Carte Blanche Café & Bar, China Grill, Ed's Chowder House, Plunge Rooftop Bar and Lounge, and the Empire Hotel Rooftop, all New York based restaurants listed in this complaint. *See* EXHIBIT B.

i) The China Grill Management Twitter similarly features hashtags of the restaurants associated with the company. The restaurants featured on the Twitter page include

Asia de Cuba, China Grill, Ed's Chowder House, and Plunge Rooftop Bar. *See* EXHIBIT C.

j)  On the China Grill Management official website, a temporary "down for maintenance" page lists five restaurants operated by the company: China Grill, Asia de Cuba, Ed's Chowder House, Plunge Rooftop Bar and All'onda.

k)  Individual Defendants directly manage several of the Restaurant locations. For example, Defendant MAX CHODOROW, a principal of China Grill Management, managed "China Grill – Fort Lauderdale" from 2012-2013 and "Asia de Cuba" from 2015-2017.

l)  The Restaurants regularly share and exchange non-exempt employees, who are interchangeable among the Restaurants. Defendants require employees to work at Restaurant locations different from their primary place of employment on special occasions (e.g., shows or holiday events), as when as whenever one location is short-staffed. For example, even though Plaintiff JAMES was primarily employed at Ed's Chowderhouse, he was frequently required to work at Empire Rooftop, Asia de Cuba, and East and West on an as needed basis. Likewise, even though Plaintiff BALLINAS was primarily employed by Defendants at China Grill in New York and at Asia de Cuba, Defendants frequently required him to work at Ed's Chowderhouse on an as needed basis. Plaintiffs KRAMER and ROSADO were frequently asked by Defendants to work at other Restaurants (including The Chester, Zerzura, and Carte Blanche, which, like Plunge Rooftop Bar, were located at the Gansevoort Hotel.) Defendants regularly transfer employees between

locations based on their own business needs, and employees may also be transferred between Restaurants upon their own request.

m)  Upon the closure of China Grill in New York in 2015, that Restaurant's former employees were moved to other China Grill Management restaurants, including Asia de Cuba. Likewise, according to Plaintiff GAGNE, a number of employees were transferred to China Grill in Fort Lauderdale upon the closure of China Grill – Miami Beach in 2012.

17.    Although Plaintiffs did not work at all of Defendants' Restaurants, **all** of the Restaurants are appropriately named in this Complaint through the relevant Corporate Defendants described above. Because the Restaurants share identical illegal wage and hour policies, the Restaurants and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the Class members for whom Plaintiffs seek to represent.

18.    At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the applicable New York and Florida laws and regulations

19.    At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

20.    Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including, but not limited to waiters, servers, hosts, bartenders, barbacks, bouncers, porters, runners, busboys, food preparers, cooks, and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

21.    At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper overtime wages for all hours worked over 40, and failure to pay for all hours worked due to time-shaving. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

22.    Further, with respect to employees who were tipped employees (the "Tipped Subclass"), including waiters, servers, bartenders, barbacks, runners, and busboys, Defendants were not entitled to take any tip credits under the FLSA, or to compensate FLSA Collective Plaintiffs at sub-minimum wage base hourly rates, because they failed to satisfy all statutory requirements for taking a tip credit. Plaintiffs JAMES, BALLINAS, KRAMER, ROSADO and GAGNE are all members of the FLSA Collective and the Tipped Subclass.

23.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

24.    Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including, but not limited to waiters, servers, hosts, bartenders, barbacks, bouncers, porters, runners, busboys, food preparers, cooks, and dishwashers) employed by Defendants at the

Restaurants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

25.     All said persons, including Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO are referred to herein as the "New York Class." The New York Class members are readily ascertainable. The number and identity of the New York Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each New York Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

26.     The proposed New York Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number depends are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the New York Class. The New York Class further includes a subclass of tipped employees comprised of waiters, servers, bartenders, barbacks, runners, and busboys ("Tipped Subclass") who also number more than forty (40). Plaintiffs JAMES, BALLINAS, KRAMER and ROSADO are members of both the New York Class and the Tipped Subclass.

27.     Plaintiff JAMES, BALLINAS, KRAMER, and ROSADO's claims are typical of those claims, which could be alleged by any member of the New York Class, and the relief sought is typical of the relief, which would be sought by each member of the New York Class in separate actions. All the New York Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper wages, (ii) failing to pay overtime

premium for hours worked in excess of forty (40) in a workweek, (iii) failing to pay wages due to time-shaving, (iv) failing to provide Class members with proper wage statements with every payment of wages, and (v) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of the New York Labor Law.

28.     Further, Defendants failed to pay Tipped Subclass Members the proper minimum wage because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the New York Labor Law. Plaintiffs   JAMES, BALLINAS, KRAMER, and ROSADO and the rest of the Tipped Subclass suffered from Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding two hours or 20% of the total hours worked each workweek,  (iii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period or the proper rate of overtime compensation, and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

29.     Defendants' corporate-wide policies and practices affected all New York Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each New York Class member. Plaintiffs and other New York Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

30.     Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO are able to fairly and adequately protect the interests of the New York Class and have no interests antagonistic to the New York Class. Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO are represented by

attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

31.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

32.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect

retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

33.     There are questions of law and fact common to the New York Class which predominate over any questions affecting only individual class members, including:

a.     Whether Defendants employed Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO and the New York Class within the meaning of the New York law;

b.     What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO and the New York Class members;

c.     At what common rate, or rates subject to common meth ods of calculation, was and are Defendants required to pay Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO and the New York Class members for their work;

d.     Whether Defendants properly notified Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO and the New York Class members of their hourly rates and overtime rates;

e.     Whether Defendants paid Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO and New York Class members the proper overtime compensation under the New York Labor Law;

f.   Whether Defendants failed to compensate Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO and New York Class members for all regular and overtime hours worked due to a policy of time-shaving;

g.   Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

h.   Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

i.   Whether Defendants caused tipped employees to engage in non-tipped duties exceeding two hours or 20% of each workweek;

j.   Whether Defendants took proper amount of tip credit allowance for each payment period under the New York Labor Law;

k.   Whether Defendants provided proper wage statements for each pay period to Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO and New York Class Members, in compliance with the New York Labor Law; and

l.   Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO and New York Class members per requirements of the New York Labor Law.

m.   Whether Defendants required Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO and New York Class members to purchase uniforms for on-the-job wear using their own money and failed to reimburse for such uniforms, thereby effectively reducing the compensation of tipped employees.

## **RULE 23 CLASS ALLEGATIONS – FLORIDA**

34.     Plaintiffs GAGNE and ALVORD bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including, but not limited to waiters, servers, hosts, bartenders, barbacks, bouncers, porters, runners, busboys, food preparers, cooks, and dishwashers) employed by Defendants at the Restaurants on or after the date that is five years before the filing of the Complaint in this case as defined herein (the "Class Period").

35.     All said persons, including Plaintiffs GAGNE and ALVORD, are referred to herein as the "Florida Class." The Florida Class members are readily ascertainable. The number and identity of the Florida Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Florida Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

36.     The proposed Florida Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number depends are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Florida Class. The Florida Class further includes a subclass of tipped employees comprised of waiters, servers, bartenders, barbacks, runners, and busboys ("Tipped Subclass") who also number more than forty (40). Plaintiff GAGNE is a member of both the Florida Class and the Tipped Subclass.

37.   Plaintiff GAGNE and ALVORD's claims are typical of those claims, which could be alleged by any member of the Florida Class, and the relief sought is typical of the relief, which would be sought by each member of the Florida Class in separate actions. All the Florida Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay at the prevailing minimum wage for all hours worked, due a policy of time-shaving, in violation of the FMWA.

38.   Further, Defendants failed to pay Tipped Subclass Members the proper minimum wage based on Defendants' invalid tip credit deduction. Defendants were not entitled to claim a tip credit because they failed to meet statutory requirements for a tip credit under the FMWA. Plaintiff GAGNE and the rest of the Tipped Subclass suffered from Defendants' invalid tip credit allowance. All tip credits were invalid because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding two hours or 20% of the total hours worked each workweek, (iii) instituted and mandated a tip pooling scheme that Tipped Subclass Members were required to participate even though they never consented to such scheme, (iv) unlawfully retained tips earned by Tipped Subclass Members and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

39.   Additionally, the compensation of Plaintiff GAGNE and Tipped Subclass Members was also reduced to a level below the prevailing Florida minimum wage, in violation of the FMWA, due to (i) Defendants' retention of tips earned by Plaintiff GAGNE and Tipped Subclass Members and (ii) Defendants' requirement that Plaintiff GAGNE and Tipped Subclass Members purchase uniforms with their own money solely to wear on the job, without reimbursing them for the costs of such uniforms.

40.     Defendants' corporate-wide policies and practices affected all Florida Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Florida Class member. Plaintiffs GAGNE and ALVORD and other Florida Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

41.     Plaintiffs GAGNE and ALVORD are able to fairly and adequately protect the interests of the Florida Class and have no interests antagonistic to the Florida Class. Plaintiffs GAGNE and ALVORD are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

42.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual

members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

43.     Current employees are often afraid to assert their rights under applicable wage and hour laws out of fear of direct or indirect retaliation from their employer. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

44.     There are questions of law and fact common to the Florida Class which predominate over any questions affecting only individual class members, including:

n.     Whether Defendants employed Plaintiffs GAGNE and ALVORD and the Florida Class within the meaning of the Florida law;

o.     What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs GAGNE and ALVORD and the Florida Class members;

p.     At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs GAGNE and ALVORD and the Florida members for their work;

q.   Whether Defendants failed to compensate Plaintiffs GAGNE and ALVORD and Florida Class members at the minimum wage for all hours worked, due to a policy of time-shaving;

r.   Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

s.   Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

t.   Whether Defendants caused tipped employees to engage in non-tipped duties exceeding two hours or 20% of each workweek;

u.   Whether Defendants instituted and mandated a tip pooling scheme without obtaining the consent of tipped employees required to participate in that scheme;

v.   Whether Defendants took proper amount of tip credit allowance for each payment period under the FMWA;

w.   Whether Defendants retained or misappropriated tips earned by tipped employees, thereby effectively reducing the compensation of such tipped employees to rates below the prevailing Florida minimum wage.

x.   Whether Defendants required tipped employees to purchase uniforms for on-the-job wear using their own money and failed to reimburse for such uniforms, thereby effectively reducing the compensation of tipped employees to rates below the prevailing Florida minimum wage.

## STATEMENT OF FACTS

45.   ***Plaintiff BRYAN JAMES***

a)  In or about June 2012, Plaintiff BRYAN JAMES was hired by Defendants to work as a bartender and server at Defendants' Ed's Chowderhouse restaurant, located at the Empire Hotel, 44 West 63rd Street, New York, NY 10023. While employed by Defendants, Plaintiff JAMES was also regularly required to work at Defendants' other New York City locations, including the Empire Hotel Rooftop, East and West, and Asia de Cuba, on an as needed basis. Plaintiff JAMES's employment by Defendants ended in May 2016.

b)  Throughout his employment by Defendants, Plaintiff JAMES worked approximately 12-14 hours per day, 2 days per week, and 8-10 hours, 2 days per week for a total of approximately 42-48 hours per workweek.

c)  Like Plaintiff JAMES, FLSA Collective Plaintiffs and New York Class Members regularly worked weeks exceeding 40 hours. Further, like Plaintiff JAMES, FLSA Collective Plaintiffs and New York Class Members regularly worked shifts exceeding 10 hours in duration.

d)  Throughout his employment, Plaintiff JAMES was paid at a sub-minimum wage base hourly rate. From the start of his employment in June 2012 until November 2015, Plaintiff JAMES was paid at a base hourly rate of $5.00 per hour, pursuant to a purported tip credit. Then from November 2015 until the end of his employment by Defendants in May 2016, Plaintiff JAMES was paid a base hourly rate of $7.50 per hour. Like Plaintiff JAMES, Tipped Subclass Members were similarly compensated at sub-minimum wage base hourly rates, based on a purported tip credit.

28

e) Throughout his employment by Defendants, Defendants frequently required Plaintiff JAMES to work off the clock, resulting in unpaid overtime and regular wages.

f) Defendants automatically deducted time from Plaintiff JAMES's daily hours worked, at least two days per week, based on a purported lunch break. However, Plaintiff JAMES never took any lunch breaks during his shifts. In fact, Plaintiff JAMES was never even allowed to take lunch break, as Defendants required him to work throughout his shifts without any breaks.

g) Throughout Plaintiff JAMES's employment by Defendants, Defendants required that Plaintiff JAMES come in early to each shift and, prior to clocking in each day, perform non-tipped tasks (including cleaning the supply closet and moving bottles of liquor) for approximately half an hour. Managers acting pursuant to Defendants instructions would refuse to let Plaintiff JAMES clock in until his scheduled shift started. Defendants never paid Plaintiff JAMES for working such pre-shift off the clock hours.

h) Approximately three times per week, throughout his employment by Defendants, Plaintiff JAMES was clocked out by managers, or required by managers to clock himself out at the end of his scheduled shifts, then continue working for approximately 30 minutes, off the clock. Plaintiff JAMES was never compensated for working such post-shift off the clock hours.

i) Due to Defendants' above-described practices of requiring uncompensated off the clock work, Plaintiff JAMES was deprived of regular and overtime compensation for approximately 5 hours each workweek.

j) Similarly, FLSA Collective Plaintiffs and New York Class Members were deprived of regular and overtime compensation each week due to Defendants' commonly applicable policies of requiring uncompensated off the clock work. Like Plaintiff JAMES, FLSA Collective Plaintiffs and New York Class Members were regularly subject to an automatic deduction for lunch even though lunch breaks were not permitted, and were frequently required by management to come in early and start working before clocking in, and also to clock out and keep working at the end of the day.  Like Plaintiff JAMES, FLSA Collective Plaintiffs and New York Class Members were never paid for the off the clock time that they were required to work each week.

k) Throughout his employment by Defendants, Plaintiff JAMES was required to shifts exceeding ten (10) hours in duration approximately twice per week, but never received any spread of hours premium payments for working such shifts. Similarly, New York Class Members were frequently required to work shifts exceeding ten (10) hours in duration, but were never paid spread of hours premium.

l) Throughout his employment by Defendants, for all overtime hours in excess of 40 that were not time-shaved, Defendants paid Plaintiff JAMES at a rate below the required tip credit overtime rate, resulting in unpaid overtime premium. During 2014, for example, Plaintiff JAMES was paid overtime at a rate of only $7.50 per hour, even though he was required to be paid overtime of at least $9.00 per hour (the lowest legally permissible tip credit overtime rate).  Likewise, Tipped Subclass Members all were deprived of overtime premium as a result of being paid overtime at an incorrect rate below the required overtime premium rate.

m) Throughout Plaintiff' JAMES's employment by Defendants, Defendants compensated Plaintiff JAMES at a "tip credit" minimum wage, which was at all relevant times below the prevailing federal and/or New York State minimum wages. Similarly, Tipped Subclass members were paid at sub-minimum wage "tip credit" base hourly rates. However, because Defendants failed to fulfill all requirements for a tip credit, all tip credits taken were invalid:

n) Plaintiff JAMES and Tipped Subclass members did not receive proper written or oral notice that Defendants were claiming a tip credit on tipped employees' compensation.  They were never informed that Defendants were claiming a tip credit allowance. They also never received any notice on their wage statements of the amount of tip credit allowance taken for each payment period, or the hourly rate of tip credit deduction.

o) Defendants failed to keep track of the daily amount in tips earned by Plaintiff JAMES and Tipped Subclass members. Defendants also failed to maintain proper employment records as required by law.

p) Throughout his employment, Plaintiff JAMES was regularly required to spend at least 2 hours or 20 percent of his working time each shift performing non-tipped work. This non-tipped work included setting up and breaking down the bar, cleaning silverware, setting up tables, sweeping, mopping, doing dishes, stocking inventory, and running food.

q) Defendants instituted and mandated an illegal tip pooling scheme that Plaintiff JAMES and Tipped Subclass Members were required to participate in, even though

they did not consent to such scheme. Defendants never explained the tip-pooling scheme that they imposed to Plaintiff JAMES or to Tipped Subclass Members.

r)  As a result of the above-described tip pooling scheme mandated by Defendants, tips earned by Plaintiff JAMES and Tipped Subclass Members were misappropriated.

s)  Defendants required Plaintiff JAMES and Tipped Subclass Members to purchase uniforms that were required on-the-job attire. Defendants never reimbursed Plaintiff JAMES and Tipped Subclass Members for such required uniforms.

t)  Defendants never provided Plaintiff JAMES with proper wage and hour notices annually or upon changes in rate of pay as required by the NYLL. Similarly, New York Class Members were never provided with any proper wage and hour notices when legally required.

u)  Defendants never provided Plaintiff JAMES with proper wage statements in compliance with the NYLL. The wage statements provided to Plaintiff JAMES did not accurately state the number of hours that Plaintiff JAMES worked each week. Similarly, Class Members also received pay statements that did not accurately state the hours that they worked each week.

46.  ***Plaintiff MIGUEL BALLINAS***:

a)  In or about February 2007, Plaintiff BALLINAS was hired by Defendants to work full-time at Defendants' China Grill Restaurant, located at 60 West 53rd Street, New York, New York 10019. In February 2017, when Defendants permanently closed the China Grill Restaurant, Plaintiff BALLINAS was transferred by Defendants from the China Grill Restaurant to work full-time at Defendants' Asia de Cuba

Restaurant, located at 415 Lafayette Street, New York, NY 10003. In addition to his full-time jobs at China Grill and Asia de Cuba, Plaintiff BALLINAS was frequently required by Defendants during his employment to work shifts at Defendants' Ed's Chowderhouse Restaurant, located in The Empire Hotel, 44 West 63rd Street, New York, NY 10023, on an as needed basis. Plaintiff BALLINAS's employment by Defendants ended on or about August 17, 2017.

b) Plaintiff BALLINAS worked at Defendants' China Grill, Asia de Cuba, and Ed's Chowderhouse Restaurants both as a busser and as a food runner.

c) **Hours (2010 – January 2014):** From 2010 until approximately January 2014, while employed by Defendants at the China Grill and Ed's Chowderhouse Restaurants, Plaintiff BALLINAS's scheduled working hours were as follows : 10 AM – 4:30 PM, 1 day per week, 4 PM – 12:30 PM, 3 days per week, and a double shift from 10 AM – 12:30 PM lasting approximately 14.5 hours, 1 day per week, for a total of approximately 46 hours each workweek.

**Hours (January 2014 – February 2017)**: From January 2014 until February 2017, while employed by Defendants at the China Grill and Ed's Chowderhouse Restaurants, Plaintiff BALLINAS's scheduled working hours were as follows: 4 PM – 12:30 PM, 3 days per week, and 11AM – 4 PM, 1 day per week, for a total of approximately 40 hours each workweek.

**Hours (February 2017 – August 17, 2017):** From approximately February 2017 and up until the end of his employment on approximately August 17, 2017, while employed by Defendants at their Asia De Cuba and Ed's Chowderhouse

Restaurants, Plaintiff BALLINAS's scheduled working hours were from 4:00pm to 11:00pm, five days a week, for a total of approximately 35 hours per week.

d) Like Plaintiff BALLINAS, FLSA Collective Plaintiffs and New York Class Members regularly worked weeks exceeding 40 hours. Further, like Plaintiff BALLINAS, FLSA Collective Plaintiffs and New York Class Members regularly worked shifts exceeding 10 hours in duration.

e) At all relevant times, Defendants paid Plaintiff BALLINAS at sub-minimum wage base hourly rates, based on a purported tip credit. From 2010 until approximately January 2014, Plaintiff BALLINAS was compensated at a sub-minimum wage base hourly rate of $4.50 per hour. Then, from January 2014 until January 2016, Plaintiff BALLINAS was compensated at the base hourly rate of $5.00 per hour. From January 2016, until the conclusion of his employment on August 17, 2017, Plaintiff BALLINAS was paid at the base hourly rate of $7.50 per hour. Like Plaintiff BALLINAS, Tipped Subclass Members were also paid at sub-minimum wage base hourly rates, based on a purported tip credit.

f) Throughout his employment by Defendants at the China Grill, Ed's Chowderhouse, and Asia de Cuba Restaurants, Defendants required Plaintiff BALLINAS to perform uncompensated off the clock work, resulting in unpaid regular and overtime wages.

g) Defendants automatically deducted time from Plaintiff BALLINAS's daily hours worked, at least two days per week, based on a purported lunch break. However, Plaintiff BALLINAS never took any lunch breaks during his shifts. In fact, Plaintiff

BALLINAS was never even allowed to take any lunch breaks, as Defendants required him to work throughout his shifts without any breaks.

h) Throughout Plaintiff BALLINAS's employment by Defendants, Defendants required that Plaintiff BALLINAS come in early to each shift and, prior to clocking in each day, work for approximately half an hour. Managers acting pursuant to Defendants instructions' would refuse to let Plaintiff BALLINAS clock in until his scheduled shift started. Defendants never paid Plaintiff BALLINAS for working such pre-shift off the clock hours.

i) Three times each workweek, managers at the Restaurants (including Defendant MAX CHODOROW, the manager at Asia de Cuba) would require Plaintiff BALLINAS to clock out at the end of his scheduled shift and continue working off the clock for approximately 1-2 hours. During this period, Plaintiff BALLINAS was usually required by Defendants to perform non-tipped tasks. Plaintiff BALLINAS was never paid for off-the-clock post-shift work.

j) Due to these policies of time shaving, Plaintiff BALLINAS was deprived of compensation due for working approximately 10 regular and overtime hours each week.

k) Likewise, FLSA Collective Plaintiffs and New York Class Members were subject to time shaving. Similarly to Plaintiff BALLINAS, FLSA Collective Plaintiffs and New York Class Members were required to work off-the-clock hours for which Defendants did not compensate them. FLSA Collective Plaintiffs and New York Class Members were deprived of regular and overtime compensation each week

due to Defendants' commonly-applicable above-referenced policies of time shaving.

l) Throughout his employment by Defendants, for all overtime hours in excess of 40 each workweek that were not time-shaved, Defendants paid Plaintiff BALLINAS at a purported overtime premium rate below the required tip credit overtime rate, resulting in unpaid overtime premium. During 2014, for example, Plaintiff BALLINAS was paid overtime at a rate of only $7.50 per hour, even though he was required to be paid overtime of at least $9.00 per hour (the lowest legal tip credit overtime rate). Likewise, Tipped Subclass members all suffered as a result of being paid overtime at an incorrect overtime rate below the required overtime premium rate.

m) Throughout his employment by Defendants, Plaintiff BALLINAS was required to work "double-shifts" exceeding ten (10) hours in duration at least once per week during 2012 and 2013 (and as needed thereafter), but never received any spread of hours premium payments for working such shifts. Similarly, New York Class Members were frequently required to work shifts exceeding ten (10) hours in duration, but were never paid spread of hours premium.

n) Throughout Plaintiff' BALLINAS's employment by Defendants, Defendants compensated Plaintiff BALLINAS at a "tip credit" minimum wage, which was at all relevant times below the prevailing federal and/or New York State minimum wages. Similarly, Tipped Subclass members were paid at sub-minimum wage "tip credit" base hourly rates. However, because Defendants failed to fulfill all requirements for a tip credit, all tip credits taken were invalid:

o) Plaintiff BALLINAS and Tipped Subclass members did not receive written or oral notice that Defendants were claiming a tip credit on tipped employees' compensation. They were never informed that Defendants were claiming a tip credit allowance. They also never received any notice on their wage statements of the hourly rate of tip credit deduction.

p) Defendants failed to keep track of the daily amount in tips earned by Plaintiff BALLINAS and Tipped Subclass members. Defendants also failed to maintain proper employment records as required by law

q) Throughout his employment, Plaintiff BALLINAS was regularly required by Defendants to spend at least 2 hours or 20 percent of each workday performing non-tipped work. This non-tipped work included shopping for ingredients, cleaning and washing dishes and cutlery, taking out the garbage, preparing garnishes for plates, accepting and unloading incoming deliveries and stocking up wine in the 2nd floor cellar.

r) Defendants instituted and mandated an illegal tip pooling scheme that Plaintiff BALLINAS and Tipped Subclass Members were required to participate in, even though they did not consent to such scheme. Defendants never explained the tip-pooling scheme that they imposed to Plaintiff BALLINAS or to Tipped Subclass Members.

s) As a result of the above-described tip pooling scheme mandated by Defendants, tips earned by Plaintiff BALLINAS and Tipped Subclass Members were misappropriated.

t) Defendants never provided Plaintiff BALLINAS with wage and hour notices annually or upon changes in rate of pay as required by the NYLL. Similarly, New York Class Members were never provided with any wage and hour notices when legally required.

u) Defendants never provided Plaintiff BALLINAS with proper wage statements in compliance with the NYLL. The wage statements provided to Plaintiff BALLINAS did not accurately state the number of hours that Plaintiff BALLINAS worked each week, the correct overtime premium rate, or the hourly rate of tip credit deduction. Likewise, New York Class Members were provided with defective wage statements that did not accurately state the number of hours that they worked each week.

47. ***Plaintiff KIM KRAMER***

a) In or about September 2014, Plaintiff KIM KRAMER was hired by Defendants to work as a bartender at Defendants' Plunge Rooftop Bar, located at the Gansevoort Hotel, 18 West 9th Avenue, New York, NY 10014. Plaintiff KRAMER's employment by Defendants ended in August 2015.

b) **Hours (September 2014 – April 2015)**: From approximately September 2014 until April 2015, Plaintiff KRAMER worked approximately 9-12 hours per day, 4-5 days per week, for a total of approximately 45-55 hours per week.

**Hours (April 2015 – August 2014)**: From approximately April 2015 until the termination of her employment by Defendants in August 2015, Plaintiff KRAMER worked approximately 12-15 hours per day, 4-5 days per week, for a total of approximately 60-70 hours each workweek.

c) Like Plaintiff KRAMER, FLSA Collective Plaintiffs and New York Class Members regularly worked weeks exceeding 40 hours. Further, like Plaintiff KRAMER, FLSA Collective Plaintiffs and Class Members regularly worked shifts exceeding 10 hours in duration.

d) Throughout her employment, Plaintiff KRAMER was paid at a sub-minimum wage base hourly rate of $5.00 per hour, pursuant to a purported tip credit. Like Plaintiff KRAMER, Tipped Subclass Members were similarly compensated at sub-minimum wage base hourly rates, based on a purported tip credit.

e) Throughout her employment by Defendants at the Plunge Rooftop Bar, Defendants frequently subjected Plaintiff KRAMER to time shaving, resulting in unpaid overtime and regular wages.

f) Defendants automatically deducted thirty (30) minutes from Plaintiff KRAMER's daily hours worked, three times per week, based on a purported lunch break. However, Plaintiff KRAMER never took any lunch breaks during her shifts. In fact, Plaintiff KRAMER was never even allowed to take lunch break, as Defendants required her to work throughout her shifts without any breaks.

g) Throughout Plaintiff KRAMER's employment by Defendants, Defendants required that Plaintiff KRAMER come in early to each shift and, prior to clocking in each day, work for approximately half an hour. Managers acting pursuant to Defendants instructions would refuse to let Plaintiff KRAMER clock in until her scheduled shift started. Defendants never paid Plaintiff KRAMER for working such pre-shift off the clock hours.

h) Approximately three times per week, throughout her employment by Defendants, Plaintiff KRAMER was required by managers, Zsolt Janka and Bruce Hank to clock out at the end of her scheduled shifts, then continue working on non-tipped tasks for approximately one hour, off the clock. Such non-tipped off-the-clock working hours, which included counting the total amount of cash tips, providing the count of the tips to the managers, and cleaning the bar area, was uncompensated.

i) Due to Defendants' above-described time shaving practices, Plaintiff KRAMER was deprived of regular and overtime compensation for approximately 5-8 hours each workweek.

j) Similarly, FLSA Collective Plaintiffs and New York Class Members were deprived of regular and overtime compensation each week due to Defendants' commonly applicable policies of requiring uncompensated off the clock work. Like Plaintiff KRAMER, FLSA Collective Plaintiffs and New York Class Members were regularly subject to an automatic deduction for lunch even though lunch breaks were not permitted, were required to come in early and work off the clock, and were frequently required by management to clock out and keep working.

k) Throughout her employment by Defendants, for all overtime hours in excess of 40 that were not time-shaved, Defendants paid Plaintiff KRAMER at a rate below the required tip credit overtime rate, resulting in unpaid overtime premium. During 2014, for example, Plaintiff KRAMER was paid overtime at a rate of only $7.50 per hour, even though she was required to be paid overtime of at least $9.00 per hour (the lowest legally permissible tip credit overtime rate).  Likewise, Tipped

Subclass members all were deprived of overtime premium as a result of being paid overtime at an incorrect rate below the required overtime premium rate.

l) Throughout Plaintiff' KRAMER's employment by Defendants, Defendants compensated Plaintiff KRAMER at a "tip credit" minimum wage, which was at all relevant times below the prevailing federal and/or New York State minimum wages. Similarly, Tipped Subclass members were paid at sub-minimum wage "tip credit" base hourly rates. However, because Defendants failed to fulfill all requirements for a tip credit, all tip credits taken were invalid:

m) Plaintiff KRAMER and Tipped Subclass members did not receive written or oral notice that Defendants were claiming a tip credit on tipped employees' compensation. They were never informed that Defendants were claiming a tip credit allowance. They also never received any notice on their wage statements of the amount of tip credit allowance taken for each payment period, or the hourly rate of tip credit deduction.

n) Defendants failed to keep track of the daily amount in tips earned by Plaintiff KRAMER and Tipped Subclass members. Defendants also failed to maintain proper employment records as required by law.

o) Throughout her employment, Plaintiff KRAMER was regularly required to spend at least 2 hours or 20 percent of her working time each shift performing non-tipped work. This non-tipped work included counting cash tips from the bar and cleaning the bar area.

p) Defendants never provided Plaintiff KRAMER with wage and hour notices annually or upon changes in rate of pay as required by the NYLL. Similarly, New

41

York Class Members were never provided with any wage and hour notices when legally required.

q)  Defendants never provided Plaintiff KRAMER with proper wage statements in compliance with the NYLL. The wage statements provided to Plaintiff KRAMER did not accurately state the number of hours that Plaintiff KRAMER worked each week. Similarly, New York Class Members also received pay statements that did not accurately state the hours that they worked each week.

48.  ***Plaintiff CHRISTOPHER ROSADO***

a)  In or about 2005, Plaintiff CHRISTOPHER ROSADO was hired by Defendants to work as a bartender at Defendants' Plunge Rooftop Bar, located at the Gansevoort Hotel, 18 West 9th Avenue, New York, NY 10014. Plaintiff ROSADO's employment by Defendants ended in March 2015.

b)  Throughout his employment, Plaintiff ROSADO worked around 12-13 hours per day, 4-5 days per week for a total of approximately 55-60 hours per workweek.

c)  Like Plaintiff ROSADO, FLSA Collective Plaintiffs and New York Class Members regularly worked weeks exceeding 40 hours. Further, like Plaintiff ROSADO, FLSA Collective Plaintiffs and Class Members regularly worked shifts exceeding 10 hours in duration.

d)  Throughout his employment, Plaintiff ROSADO was paid at a sub-minimum wage regular hourly rate of $5.00 per hour, pursuant to a purported tip credit. Like Plaintiff ROSADO, Tipped Subclass Members were similarly compensated at sub-minimum wage base hourly rates, based on a purported tip credit.

e) Throughout his employment by Defendants at the Plunge Rooftop Bar, Defendants frequently required Plaintiff ROSADO to perform uncompensated work off the clock, resulting in unpaid overtime and regular wages.

f) Throughout his employment by Defendants, at the end of each shift, Plaintiff ROSADO was required by managers Zsolt Janka and Bruce Hank to clock out at the end of his scheduled shifts, then continue working on non-tipped tasks for approximately 1-2 hours, off the clock. Such non-tipped off-the-clock working hours, which included counting the total amount of cash tips, providing the count of the tips to the managers, and cleaning the bar area, was uncompensated.

g) Throughout Plaintiff ROSADO's employment by Defendants, Defendants required that Plaintiff ROSADO come in early to each shift and, prior to clocking in each day, work for approximately half an hour. Managers acting pursuant to Defendants instructions would refuse to let Plaintiff ROSADO clock in until his scheduled shift started. Defendants never paid Plaintiff ROSADO for working such pre-shift off the clock hours.

h) Defendants automatically deducted thirty (30) minutes from Plaintiff ROSADO's daily hours worked, at least once per week, based on a purported meal break. However, Plaintiff ROSADO never took any lunch breaks during his shifts. In fact, Plaintiff ROSADO was never even allowed to take a meal break, as Defendants required him to work throughout her shifts without any breaks.

i) Due to Defendants' above-described requirement that he perform uncompensated off the clock work, Plaintiff ROSADO was deprived of regular and overtime compensation for approximately 5-10 hours each workweek.

j)   Similarly, FLSA Collective Plaintiffs and New York Class Members were deprived of regular and overtime compensation each week due to Defendants' commonly applicable policies of requiring uncompensated off the clock work. Like Plaintiff ROSADO, FLSA Collective Plaintiffs and New York Class Members were regularly required by management to perform uncompensated non-tipped tasks before clocking in, after clocking out, and during their meal breaks.

k)   Throughout his employment by Defendants, for all overtime hours in excess of 40 each workweek that were not time-shaved, Defendants paid Plaintiff ROSADO at a rate below the required tip credit overtime rate, resulting in unpaid overtime premium. During 2013, for example, Plaintiff ROSADO was paid overtime at a rate of only $7.50 per hour, even though he was required to be paid overtime of at least $8.63 per hour (the lowest legally permissible tip credit overtime rate). Likewise, Tipped Subclass members all were deprived of overtime premium as a result of being paid overtime at an incorrect rate below the required overtime premium rate.

l)   Throughout Plaintiff ROSADO's employment by Defendants, Defendants compensated Plaintiff ROSADO at a "tip credit" minimum wage, which was at all relevant times below the prevailing federal and/or New York State minimum wages. Similarly, Tipped Subclass members were paid at sub-minimum wage "tip credit" base hourly rates. However, because Defendants failed to fulfill all requirements for a tip credit, all tip credits taken were invalid:

m)   Plaintiff ROSADO and Tipped Subclass members did not receive written or oral notice that Defendants were claiming a tip credit on tipped employees'

compensation.  They were never informed that Defendants were claiming a tip credit allowance. They also never received any notice on their wage statements of the amount of tip credit allowance taken for each payment period, or the hourly rate of tip credit deduction.

n)  Defendants failed to keep track of the daily amount in tips earned by Plaintiff ROSADO and Tipped Subclass members. Defendants also failed to maintain proper employment records as required by law

o)  Throughout her employment, Plaintiff ROSADO was regularly required to spend at least 2 hours or 20 percent of his working time each shift performing non-tipped work. This non-tipped work included counting cash tips from the bar and cleaning the bar area.

p)  Defendants never provided Plaintiff ROSADO with wage and hour notices annually or upon changes in rate of pay as required by the NYLL. Similarly, New York Class Members were never provided with any wage and hour notices as required under the NYLL.

q)  Defendants never provided Plaintiff ROSADO with proper wage statements in compliance with the NYLL. The wage statements provided to Plaintiff ROSADO did not accurately state the number of hours that Plaintiff ROSADO worked each week. Similarly, FLSA Collective Plaintiffs and New York Class Members also received defective pay statements that did not accurately state the hours that they worked each week.

49.  ***Plaintiff JONATHAN GAGNE***:

a) In or about March 2010, Plaintiff GAGNE was hired by Defendants to work as a server and expeditor at Defendants' China Grill Restaurant – Fort Lauderdale, located at 1881 SE 17th St, Fort Lauderdale, Florida, 33316. Defendants terminated Plaintiff GAGNE's employment in June 2013 upon the closure of China Grill – Fort Lauderdale.

b) During Plaintiff GAGNE's employment, his approximate hours each week each workweek were usually as follows: 4 PM – 3 AM, 5 times per week, and 1 PM – 3 AM, 2 times per week, for a total of approximately 79 hours per workweek.

c) Like Plaintiff GAGNE, other FLSA Collective Plaintiffs and Florida Class Members regularly worked for more than 40 hours each workweek.

d) Throughout his employment, Plaintiff GAGNE was paid at a straight time base hourly rate of $4.00 for all hours that he worked, including those hours in excess of 40 that he worked each week. Similarly, other FLSA Collective Plaintiffs and Florida Class Members were compensated at straight time base hourly rates for all hours worked, including their hours exceeding 40 each workweek.

e) Throughout Plaintiff GAGNE's employment by Defendants,  Defendants required that, prior to clocking in each day, Plaintiff GAGNE perform non tipped tasks (including cleaning, polishing silverware, setting up tables, stacking plates for chefs and running materials) for approximately one hour. Managers acting pursuant to Defendants instructions would refuse to let Plaintiff GAGNE clock in until his scheduled shift started. Defendants never paid Plaintiff GAGNE for working such pre-shift off the clock hours.

f) Further, throughout Plaintiff GAGNE's employment by Defendants, Defendants and managers acting based on Defendants' instructions required Plaintiff GAGNE to clock out at the time that his shift was scheduled to end, and then continue working off the clock for approximately one additional hour on non-tipped tasks (including cleaning, polishing silverware, setting up tables, stacking plates for chefs and running food). Defendants never paid Plaintiff GAGNE for working such post-shift off the clock hours.

g) Defendants automatically deducted thirty (30) minutes from Plaintiff GAGNE's daily hours worked, three times per week, based on a purported lunch break. However, Plaintiff GAGNE never took any lunch breaks during his shifts. In fact, Plaintiff GAGNE was never even allowed to take lunch break, as Defendants required him to work throughout her shifts without any breaks.

h) Plaintiff GAGNE was not compensated at all for the above-described mandatory working time immediately prior to and after his scheduled shift, during which he was required by Defendants to work off the clock on non-tipped tasks. Due to Defendants' time-shaving of pre- and post-shift working hours, Plaintiff GAGNE was deprived of pay for around 10-14 regular and overtime hours each workweek.

i) Like Plaintiff GAGNE, FLSA Collective Plaintiffs and Florida Class Members were required by Defendants to perform non-tipped work before and after scheduled shifts while off the clock, without compensation, and were required to work through meal breaks despite their hours being reduced based on the meal breaks. Like Plaintiff GAGNE, due to Defendants' above-described policies of time-shaving, FLSA Collective Plaintiffs and Florida Class Members were each

deprived of compensation for regular and overtime hours during which they were made to work off the clock each workweek.

j)  Throughout Plaintiff' GAGNE's employment by Defendants, Defendants compensated Plaintiff GAGNE at a "tip credit" minimum wage, which was at all relevant times below the prevailing federal and/or Florida minimum wages. Similarly, Tipped Subclass members were paid at sub-minimum wage "tip credit" base hourly rates. However, because Defendants failed to fulfill all requirements for a tip credit, all tip credits taken were invalid.

k)  Plaintiff GAGNE and Tipped Subclass members did not receive written or oral notice that Defendants were claiming a tip credit on tipped employees' compensation.  They were never informed that Defendants were claiming a tip credit allowance.

l)  Defendants failed to keep track of the daily amount in tips earned by Plaintiff GAGNE and Tipped Subclass members. Defendants also failed to maintain proper employment records as required by law

m)  Throughout his employment at China Grill – Fort Lauderdale, Plaintiff GAGNE was regularly required to spend at least 2 hours or 20 percent of each shift performing non-tipped work. This non-tipped work included cleaning, polishing silverware, setting up tables, stacking plates for chefs and running materials. Similarly, Tipped Subclass Members were required to perform non-tipped tasks for at least 2 hours or 20 percent of each shift performing non-tipped work.

n)  Defendants instituted and mandated an illegal tip pooling scheme that Plaintiff GAGNE and Tipped Subclass Members were required to participate in, even

though they did not consent to such scheme. Defendants never explained the tip-pooling scheme that they imposed to Plaintiff GAGNE or to Tipped Subclass Members.

o)   As a result of the above-described tip pooling scheme mandated by Defendants, tips earned by Plaintiff GAGNE and Tipped Subclass Members were misappropriated. Defendants' misappropriation of tips served to reduce the compensation of Plaintiff GAGNE and Tipped Subclass Members to rates below the prevailing Florida minimum wage.

p)   Defendants required Plaintiff GAGNE and Tipped Subclass Members to purchase uniforms that were required on-the-job attire for China Grill – Fort Lauderdale employees. Defendants never reimbursed Plaintiff GAGNE and Tipped Subclass Members for such required uniforms, thereby reducing the compensation of Plaintiff GAGNE and Tipped Subclass Members to rates below the prevailing Florida minimum wage.

50.   *Plaintiff MICHELLE ALVORD*

a)   In or about October 2012, Plaintiff ALVORD was hired by Defendants to work as a hostess and maitre'd at Defendants' China Grill Restaurant in Fort Lauderdale, located at 1881 SE 17th St, Fort Lauderdale, Florida, 33316. Plaintiff ALVORD's employment ended in June 2013 when the China Grill Restaurant in Fort Lauderdale closed.

b)   Throughout Plaintiff ALVORD's employment by Defendants, she regularly worked two daily shifts: 8 AM until 12 PM and 4 PM until 2 AM, 6 days per week, for a total of approximately 75-85 hours each workweek.

c)  From October 2012 until November 2012, Plaintiff ALVORD was compensated at a straight time base hourly rate of $10 per hour for all hours worked, including hours in excess of 40 each workweek. Then, from November 2012 until the termination of her employment in June 2013, Plaintiff ALVORD  was paid at a straight time base hourly rate of $12.00 per hour for all hours worked, including hours in excess of 40 each workweek.

d)  Like Plaintiff ALVORD, FLSA Collective Plaintiffs and Florida Class Members were paid at straight time base hourly rates for all hours worked, including hours worked in excess of 40 each workweek.

e)  Throughout Plaintiff ALVORD's employment by Defendants, Defendants required that, prior to clocking in each day, Plaintiff ALVORD work for approximately one hour. Managers acting pursuant to Defendants instructions' would refuse to let Plaintiff ALVORD clock in until her scheduled shift started. Defendants never paid Plaintiff ALVORD for working such pre-shift off the clock hours.

f)  Further, throughout Plaintiff ALVORD's employment by Defendants, Defendants and managers acting based on Defendants' instructions required Plaintiff ALVORD to clock out at the time that her shift was scheduled to end, and then continue working off the clock for approximately one additional hour. Defendants never paid Plaintiff GAGNE for working such post-shift off the clock hours.

g)  Defendants automatically deducted thirty (30) minutes from Plaintiff ALVORD's daily hours worked, at least once per week, based on a purported meal break. However, Plaintiff ALVORD never took any meal breaks during her shifts.

h)   During Plaintiff ALVORD's employment by Defendants at China Grill – Fort Lauderdale, during events occurring approximately once every two-three weeks when the Restaurant was especially crowded and busy (for example, New Years Eve, as well as other special events such as private parties), managers of the Restaurant acting pursuant to Defendants' instructions would order Plaintiff ALVORD to not clock in for her first shift from 8 AM to 12 PM, and would require Plaintiff ALVORD to work such shifts off the clock.

i)   During the same special events, managers of the Restaurant acting pursuant to Defendants' instructions would order Plaintiff ALVORD to clock out at approximately 11:30, and continue working off the clock until around 4 AM.

g)   Plaintiff ALVORD was not compensated at all for the above-described off-the-clock working hours she was required to work on days that China Grill in Fort Lauderdale was holding special events.

h)   As a result of the above-described policies of requiring uncompensated off the clock work, Plaintiff ALVORD was deprived of compensation for working approximately 5 hours per week, as well 13 hours on each day featuring a special event (or, on a per week average basis, approximately 4.5 – 6.5 uncompensated hours), for a total of approximately 10-12 uncompensated regular and overtime hours each workweek.

i)   Like Plaintiff ALVORD, FLSA Collective Plaintiffs and Florida Class Members also were regularly required to work off the clock without compensation, due to Defendants' commonly applied policies of requiring uncompensated work off the clock.

51

51.     Based on Plaintiffs' direct observations and conversations with other employees at the restaurants, all FLSA Collective Plaintiffs and New York and Florida Class members worked under similar policies and similarly suffered from Defendants' failure to pay proper wages under the FLSA, NYLL, and FMWA.

52.     Defendants failed to pay Plaintiffs, FLSA Collective Plaintiffs and New York and Florida Class Members overtime at one and one half times their straight time base hourly rates, for each hour in excess of forty (40) worked each workweek.

53.     Defendants paid Plaintiffs JAMES, BALLINAS, KRAMER, ROSADO, and GAGNE and Tipped Subclass Members at "tip credit" rates below the prevailing federal, New York State, and Florida minimum wages.  However, Defendants were not entitled to claim any tip credits under the FLSA, NYLL, or FMWA because they (i) failed to properly provide notice to all tipped employees that Defendants were taking a tip credit, (ii) failed to provide proper wage statements informing tipped employees of the amount of tip credit taken for each payment period, or the hourly rate of tip credit deduction, in violation of the NYLL, (iii) caused tipped employees to engage in non-tipped duties exceeding 20% of each workday, or two (2) hours of each shift, (iv) failed to track the amount of tips received daily, and (v) instituted a tip pool whereby the manager would retain tips earned by tipped employees.

54.     Plaintiffs JAMES, BALLINAS, KRAMER, ROSADO, and GAGNE and Tipped Subclass Members were (i) deprived of tips that they earned due to Defendants' policy of misappropriating their tips. Due to these commonly applicable policies, the compensation paid to Plaintiff GAGNE and Class Members was effectively reduced to rates below the Florida minimum wage, in violation of the FMWA.

55.     Plaintiffs JAMES and GAGNE and New York and Florida Class Members were required by Defendants to purchase uniforms to wear on the job with their own money, and were never reimbursed by Defendant for such uniforms. Due to these commonly applicable policies, the compensation paid to Plaintiff GAGNE and Florida Class Members was effectively reduced to rates below the Florida minimum wage, in violation of the FMWA.

56.     Plaintiff JAMES, BALLINAS, KRAMER, and ROSADO and Class members had workdays that regularly exceeded ten (10) hours in length. However, Defendants failed to pay them spread of hours premium when due under the NYLL.

57.     Plaintiffs, FLSA Collective Plaintiffs, and New York and Florida Class members were subject to Defendants' commonly-applicable policies of time-shaving, resulting in unpaid regular and overtime hours.

58. At no time during the relevant time periods did Defendants provide Plaintiffs JAMES, BALLINAS, KRAMER, ROSADO or Tipped Subclass members with wage notices or proper wage statements as required by NYLL. Defendants also failed to disclose on wage statements the hourly rate of tip credit taken, or the amount of tip credit claimed in each pay period on the wage statements provided to Tipped Subclass Members. The wage statements provided to Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO were also defective as they stated improper rates of overtime compensation below the lowest permissible rate required by law.

59.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and New York and Florida Class members in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

60.    Plaintiffs reallege and reaver Paragraphs 1 through 59 of this class and collective action Complaint as fully set forth herein.

61.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

62.    At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

63.    At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

64.    At all relevant times, Defendants had a policy and practice of failing to pay the statutory minimum wage to Plaintiffs and tipped FLSA Collective Plaintiffs for their hours worked. Defendants were also not entitled to claim any tip credits because they failed to satisfy the statutory requirements under the FLSA.

65.    At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek.

66.    At all relevant times, Defendants willfully engaged in a policy and practice of failing to pay Plaintiffs and FLSA Collective Plaintiffs for all hours worked due to time shaving.

67.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective

Plaintiffs of their rights under the FLSA.

68.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages, unpaid overtime wages, unpaid wages due to time shaving, plus an equal amount as liquidated damages.

69.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

70.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

71.     Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO reallege and reaver Paragraphs 1 through 70 of this class and collective action Complaint as fully set forth herein.

72.     At all relevant times, Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

73.     Defendants willfully violated Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO's and Class members' rights by failing to pay them proper wages in the lawful amount for all hours worked. Defendants were not entitled to claim any tip credits.

74.     At all relevant times, Defendants willfully violated Plaintiffs' and New York Class

members' rights by failing to pay them for all hours worked due to a policy of time shaving.

75.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.  Defendants are required to provide accurate and proper information on wage statements issued to employees in accordance with the NYLL. Defendants failed to satisfy the wage statements requirements under the NYLL because such tip credit allowance was never clearly included in wage statements to tipped employees for each payment period.

76.    Defendants knowingly and willing refused to reimburse Plaintiff JAMES's required uniform expenses in violation of the NYLL.

77.    Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage and hour notices, at date of hiring and annually thereafter, as required under the New York Labor Law.

78.    Due to the Defendants' New York Labor Law violations, Plaintiffs JAMES, BALLINAS, KRAMER, and ROSADO and New York Class members are entitled to recover from Defendants unpaid overtime premium, unpaid minimum wages, unpaid wages due to time shaving, unreimbursed uniform expenses, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the New York Labor Law.

## COUNT III

## VIOLATION OF THE FLORIDA MINIMUM WAGE ACT

79.    Plaintiffs GAGNE and ALVORD reallege and reaver Paragraphs 1 through 78 of this class and collective action Complaint as fully set forth herein.

80.    At all relevant times, Plaintiffs GAGNE and ALVORD and Class members were employed by the Defendants within the meaning of the FMWA.

81.    Plaintiffs GAGNE and ALVORD provided pre-suit notice to Defendants at least 15 days before the filing of this Complaint, as required under the FMWA.

82.    Defendants willfully violated Plaintiffs GAGNE and Tipped Subclass Members members' rights by failing to pay them proper wages in the lawful amount for all hours worked due to an invalid tip credit, tip misappropriation, and uniform deductions. Defendants were not entitled to claim any tip credits, or require Florida Class Members to purchase uniforms for which there was no reimbursement.

83.    At all relevant times, Defendants willfully violated Plaintiffs GAGNE and ALVORD and Florida Class members' rights by failing to pay them at the prevailing Florida minimum wage for all hours worked due to a policy of time shaving.

84.    Due to the Defendants' willful FMWA violations, Plaintiffs GAGNE and ALVORD and Florida Class members are entitled to recover from Defendants unpaid minimum wages, unpaid wages due to time shaving, unreimbursed uniform expenses, and tip misappropriation, reasonable attorneys' fees, liquidated damages, and costs and disbursements of the action, pursuant to the Florida Minimum Wage Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and FMWA;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by

law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid overtime compensation due under the FLSA and the NYLL;

d.    An award of unpaid minimum wages due under the FLSA, NYLL, and FMWA;

e.    An award of unpaid wages caused by time shaving under the FLSA, NYLL, and FMWA;

f.    An award of unpaid spread of hours premium due under the NYLL;

g.    An award of unreimbursed uniform expenses due under the NYLL;

h.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

i.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the New York Labor Law;

j.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the FMWA;

k.    An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

l.    Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

m.    Designation of this action as a class action pursuant to F.R.C.P. 23;

n.    Designation of Plaintiffs as Representatives of the New York and Florida Classes; and

o.    Such other and further relief as the Court deems necessary and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: January 18, 2018

Respectfully submitted,

By: */s/ C.K. Lee*
     C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
Taimur Alamgir (TA 9007)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs and the Class*